[Cite as *In re H.B.*, 2016-Ohio-5119.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

IN RE: H.B.

C.A. No.  28179

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.  DN 14-03-174

DECISION AND JOURNAL ENTRY

Dated: July 27, 2016

MOORE, Judge.

{¶1}  Appellant, Dontaeous B. ("Father"), appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated his parental rights and placed his minor child in the permanent custody of Summit County Children Services Board ("CSB"). This Court affirms.

I.

{¶2}  Father is the biological father of H.B., born March 17, 2014.  The child's mother is not a party to this appeal.

{¶3}  At the time H.B. was born, her older brother was already in the temporary custody of CSB, where he had been since shortly after his birth.  Although Father is not the father of the older brother, he was involved in a violence-plagued relationship with the mother and was convicted of child endangering after injuring that child.  H.B.'s brother, who is not a party to this appeal, was eventually placed in the permanent custody of CSB.

{¶4} On March 20, 2014, CSB filed a complaint to allege that H.B. was a dependent child because of ongoing domestic violence and other problems in the home. She was later adjudicated a dependent child and allowed to remain in the mother's custody under an order of protective supervision. At that time, Father was incarcerated for a felony offense of domestic violence against the mother that occurred shortly after this case began.

{¶5} Several months later, H.B. was removed from the mother's custody pursuant to Juv.R. 6 because they had been evicted from their home and the mother was arrested and later convicted of a felony offense. H.B. was placed in the same foster home as her older brother, where both children remained throughout this case.

{¶6} In addition to resolving their domestic violence and other criminal problems, the case plan required both parents to address their mental health and substance abuse problems, but neither parent complied with any aspect of the case plan. By February and March of 2015, both parents were again incarcerated and were no longer in contact with CSB or their child.

{¶7} On September 8, 2015, CSB moved for permanent custody of H.B. Following a hearing, the trial court terminated parental rights and placed H.B. in the permanent custody of CSB. Father appeals and raises two assignments of error that will be consolidated for ease of review.

II.

## ASSIGNMENT OF ERROR I

THE TRIAL COURT ABUSED ITS DISCRETION BY DENYING FATHER'S MOTION FOR A CONTINUANCE.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED IN GRANTING PERMANENT CUSTODY OF THE MINOR CHILD TO [CSB] WHEN [CSB] DID NOT USE REASONABLE EFFORTS AT FINDING A KINSHIP PLACEMENT.

{¶8} Father does not dispute that he is unable to provide H.B. with a suitable home because, at the time of the permanent custody hearing, he had been convicted of another felony offense and was not scheduled to be released from prison until September 2018. Instead, he asserts that the trial court committed reversible error by failing to continue the hearing and by failing to require CSB to make "reasonable efforts" to find a suitable family member or friend to take legal custody of H.B. Father's assignments of error are premised on his assertion that CSB "did not make an honest and purposeful effort to place [H.B.] with a relative[.]" The record fails to support his argument.

{¶9} The evidence before the trial court revealed that CSB made reasonable efforts to locate a family member who was willing and able to provide H.B. with an appropriate home. The caseworker testified about her efforts to find a relative placement for H.B.

{¶10} The mother gave her the name of H.B.'s paternal grandmother. Father also referred the caseworker to H.B.'s paternal grandmother and to a paternal aunt. Although Father now argues that CSB waited until October 2015 to contact the grandmother, the caseworker testified that she first contacted the grandmother shortly after H.B. was removed from the mother's custody.

{¶11} The caseworker explained that she contacted the grandmother and the aunt, instructed them to contact the agency's kinship worker so that they could be screened for potential placement, but neither of them did so. In fact, the kinship worker reached out to each of them, but they did not return her calls. The caseworker testified that it is the policy of CSB to stop pursuing a potential placement if they do not follow through with the required kinship screening appointments.

{¶12} Nevertheless, when Father again mentioned the paternal grandmother to the caseworker after CSB moved for permanent custody, the caseworker asked the kinship worker to contact her about taking custody of H.B. After several unsuccessful attempts by the kinship worker to meet with the grandmother, CSB again ruled her out as a possible placement. When the caseworker spoke to Father about the grandmother not following through, Father explained that the grandmother had raised her own children and "really does not want to deal with" CSB.

{¶13} Because neither relative had submitted to a background check, an interview or a home study by CSB, there was no evidence before the trial court that either relative could provide a suitable home for H.B. The trial court likewise had no evidence before it to suggest that either relative was interested in providing a home for H.B., as neither had visited the child during the case, nor had they attended any court proceedings or filed anything with the court.

{¶14} Consequently, the record fails to support Father's argument that CSB failed to make reasonable efforts to investigate relatives for potential placement of H.B. or that the hearing should have been continued to enable a further investigation. Father's assignments of error are overruled.

III.

{¶15} Father's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
CARLA MOORE
FOR THE COURT

CARR, P. J.
WHITMORE, J.
CONCUR.


APPEARANCES:

JASON D. WALLACE, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.

TONY PAXTON, Guardian ad litem.